UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MITCHELL GROUP USA LLC; and
GAPARDIS HEALTH AND BEAUTY,
INC.,

          Plaintiffs,

v.

MAMADOU M. HADJ AKA MOURAD
HADJ, INDIVIDUALLY and D/B/A
"MOURAD HADJ HMM INC"; "JOHN
DOES" 1-10; and UNKNOWN ENTITIES 1-10

          Defendants.

Case Number:

Judge:

## COMPLAINT

Plaintiffs Mitchell Group USA LLC and Gapardis Health and Beauty, Inc. (collectively "Plaintiffs"), bring this action to obtain redress and compensation for past and ongoing loss and damage sustained as a result of trademark infringement and unfair competition, among other statutory and common law violations, by Mamadou M. Hadj AKA Mourad Hadj, individually and d/b/a Mourad Hadj HMM Inc; John Does 1-10; and Unknown Entities 1-10 (collectively "Hadj Defendants"). Plaintiffs hereby allege the following:

## PARTIES

### Plaintiffs

1.    Plaintiff Gapardis Health and Beauty, Inc. ("Gapardis") is a corporation duly organized and existing by virtue of the laws of the state of Florida, with its principal place of business at 1 S.E. 3rd Avenue, Suite 1860, Miami, Florida 33131.

2.      Plaintiff Mitchell Group USA LLC ("Mitchell Group") is a limited liability company duly organized and existing by virtue of the laws of the State of Florida, with its principal place of business at 1 S.E. 3rd Avenue, Suite 1860, Miami, Florida 33131.

3.      Plaintiffs are the owners of the various Federal and State trademark registrations at issue in this suit, as hereinafter described.

### Defendants

4.      Upon information and belief, Defendant Mamadou M. Hadj AKA Mourad Hadj is the owner, controlling force and/or operator of "Mourad Hadj HMM Inc.", an unregistered business entity in New York, among other unknown entities, with principal places of business at 2785 Sedgwick Avenue, Apt 2H, Bronx, New York; 586 River Avenue, Unit 1612, Bronx NY10468; and 10-19 Ogden Avenue, Bronx, NY 10452 ("Defendants" or "Hadj").

5.      The true capacities and names of Defendants, whether individual, corporate and/or partnership entities, named herein as John Does 1-10 and Unknown Entities 1-10 are not currently known to Plaintiffs, but, upon information and belief, are associated with the Hadj Defendants, are additional moving, active and conscious forces behind Defendants infringing conduct, as well as suppliers and others in the chain of distribution. Plaintiffs will identify these unknown John Does and Unknown Entities upon further discovery and investigation and will amend its pleadings accordingly.

6.      By importing and distributing or facilitating the importation and distribution of materially-different gray market goods bearing Plaintiffs' trademarks, Defendants infringe Plaintiffs' various Federal trademark registrations, their common law rights, and engage in acts of unfair competition.

### JURISDICTION AND VENUE

7.     This is an action for trademark infringement, unfair competition and for violations of the New York State common law and related causes of action brought pursuant to Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c), Section 349 of the New York General Business Law, and the common law of the State of New York

8.     This Court has original jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1121 (actions arising under the Trademark Act), and 28 U.S.C. §§ 1331, 1337, 1338(a) (acts of Congress relating to trademarks) and 1338(b) (pendant jurisdiction over state law claims).

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events or acts giving rise to the claim occurred in this District, a substantial part of the property that is the subject of the action is situated in this District and, upon information and belief, Defendants and their principals reside or contract business in this District.

## FACTS

### A. Plaintiff's Products and Trademarks

10.    Gapardis is the owner of the entire right, title, and interest in the following valid, incontestable, and subsisting Federal trademark registrations:

| | |
|---|---|
| FAIR & WHITE | Reg. No. 2,839,374 |
|  | Reg. No. 2,497,918 |
| F & W | Reg. No. 3,289,890 |

Copies of said trademark registrations are attached as Exhibit A.

11.    A Federal trademark registration is *prima facie* evidence of a Registrant's exclusive right to use the registered trademark in commerce in connection with the goods or services specified in the certificate, pursuant to 15 U.S.C. §1057(b).

12. For over twenty years, Plaintiffs have devoted substantial resources to promoting the goodwill of their several federally registered trademarks, including FAIR & WHITE; F & W and PARIS FAIR & WHITE marks (collectively referred to herein as the "FAIR & WHITE Marks"), for a broad variety of Plaintiffs' cosmetic and health and beauty products including lotions, creams, gel-cremes, and soaps, among others.

13. Plaintiffs have used the FAIR & WHITE Marks in commerce since at least as early as 1999.

14. Plaintiffs have extensively advertised, promoted and otherwise used the Marks in commerce throughout the United States, including this District.

15. As the owner of the federally registered FAIR & WHITE Marks, Plaintiffs are the exclusive U.S. importer and distributor of genuine FAIR & WHITE® Brand products manufactured for Plaintiffs by Continental Labortoires of Paris, France.

16. Due to Plaintiffs' extensive use and promotion of their respective marks, the public has come to associate the FAIR & WHITE Marks with Plaintiffs' various high-quality cosmetic and health and beauty products.

17. Plaintiffs have carefully monitored and policed the use of the FAIR & WHITE Marks.

18. Attempting to capitalize on the strength and goodwill of the FAIR & WHITE Marks, Defendants have imported, distributed and sold (and have attempted to import, distribute and sell) materially-different gray market goods that display the FAIR & WHITE Marks and infringed Plaintiffs exclusive rights in those trademarks.

**B. Hadj Defendants' Infringing Activities**

19. Upon information and belief, long after Plaintiff's adoption and use of the FAIR

4

& WHITE Marks and after Plaintiff's federal registration of their respective marks, Hadj, on behalf of himself and associated entities, began importing, selling, offering for sale, and distributing gray market products, manufactured outside the U.S. and originally intended for sale outside the U.S., being sold under the FAIR AND WHITE, F&W, and/or PARIS FAIR & WHITE marks.

20. Hadj, himself personally, and all entities with which he is associated, is not an authorized importer, distributor, retailer or wholesaler of FAIR & WHITE Brand products and thus, upon information and belief, the goods imported, offered for sale and distributed by Hadj Defendants are gray market goods and materially different from the genuine product sold by Plaintiffs under the FAIR & WHITE Marks in the U.S.

21. The grey market products are sold in packaging that replicates Plaintiffs' genuine packaging, save for subtle but material differences consumers are likely to overlook. Indeed, upon information and belief, the gray market version of the FAIR & WHITE Brand products imported and distributed by Hadj Defendants either: (1) does not contain an active ingredient used in the U.S. formulation of the products; or (2) fails to include a listing of the active ingredient, warnings, or direction as required by the Food and Drug Administration in the United States. The versions of the products imported by Hadj Defendants are intended for sale in jurisdictions outside the United States, such as Africa and Europe, where regulations are different than the U.S. Accordingly, the packaging and formulations are different. The U.S. formulation, for example, contains hydroquinone in no greater than 2% concentrations as allowed by the FDA, and therefore also contains required disclosures on the packaging, to alert consumers as to the active ingredients, indications for use, and the usage instructions. Some jurisdictions outside the U.S. do not require such disclosures and therefore have packaging that

does not comply with U.S. regulations. Indeed, in some other instances, certain jurisdictions do not allow hydroquinone, so the formulation is hydroquinone-free. Thus, consumers in the U.S. who are looking for the FAIR & WHITE Brand, and purchase grey market versions intended for sale in jurisdictions outside the U.S. may purchase products without the active ingredients or products with varying formulations including hydroquinone and no disclosures.

22. Retailers, consumers, as well as the public at large, will be, and already have been, misled into believing that these products are authorized for sale and distribution by Plaintiff, or that Hadj, or his related entities, is approved, sponsored or authorized to distribute products bearing or containing the FAIR & WHITE Marks.

23. Consumers deceived by Defendants' conduct have and will purchase these gray market products instead of Plaintiffs' authentic products, and because the gray market goods either do not contain a listing of the active ingredient, warnings, or direction as required by the Food and Drug Administration in the United States, or may not contain an active ingredient at all, there may be a decreased demand for Plaintiffs' authentic products over time.

24. Hadj's sale of gray market FAIR & WHITE Brand products deprives Plaintiffs of sales and profits they would otherwise receive but for Hadj's unlawful conduct.

25. Plaintiffs have learned that a recent shipment, purportedly from its manufacturer, Continental Labortoires, to Hadj recently arrived in the Port of New York on December 5, 2015 (the "Dec. 5 Shipment"). The Dec. 5 Shipment's Bill of Lading reproduced below and attached as Exhibit B for reference.

| **Dec. 5 Shipment Bill of Lading** |
|---|

| | |
|---|---|
| Date | 2015-12-05 |
| Shipper Name | Continental Laborstores |
| Shipper Address | MEDICA CENTER NEPTUNE, RUE DES MARAICHERS, LA TESTE, LA TESTE-DE-BUCH 33260, FRANCE |
| Consignee Name | Mourad Hadj Himm Inc |
| Consignee Address | 886 RIVER AVENUE, UNIT 1612, BRONX NY 10451, USA |
| Notify Party Name | In Time Shipping Corp. |
| Notify Party Address | 167-25 ROCKAWAY BLVD. JAMAICA NY 11434, USA |
| Weight | 843 |
| Weight Unit | K |
| Weight in KG | 843 |
| Quantity | 95 |
| Quantity Unit | CTN |
| Country of Origin | France |
| Details | 843 KG<br>From port: Le Havre, France<br>To port: New York, New York |
| Place of Receipt | Le Havre France |
| Foreign Port of Lading | Le Havre, France |
| U.S. Port of Unlading | New York, New York |
| U.S. Destination Port | New York, New York |
| Commodity | SHOWER GEL, BODY CREAM HS 3401300000 |
| Container | SEGU5150240 |
| Carrier Name | MINERVA LINE LTD |
| Vessel Name | AMALTHEA |
| Voyage Number | 1031 |
| Bill of Lading Number | MVLESC5912 |
| Master Bill of Lading Number | U-SUPRLE-039522 |
| Lloyd's Code | 9397913 |
| HTS Codes | HTS 3401.30.00.00 |

26. Upon information and belief, Continental Labortoires did not authorize the Dec. 5 Shipment, did not authorize the use of its name as "Shipper" of these goods, did not orchestrate, organize or otherwise participate in the shipment of these goods.

27. Upon information and belief, the goods contained in the Dec. 5 Shipment are gray market goods and materially different from the genuine product imported and sold by Plaintiffs under the FAIR & WHITE Marks in the U.S.

28. As identified on the Dec. 5 Shipment Bill of Lading, In-Time Shipping Corp., a

7

corporation duly organized and existing by virtue of the law of New York State, with a principal place of business at 167-25 Rockaway Blvd, Jamaica, NY 11434, is the "Notify Party" and quasi-customs broker for Hadj, which in turn facilitates and arranges for the customs clearance of the goods and arranges for transport of the goods through to its intended recipient; upon information and belief, Harold Mistler of Jamaica, New York, is the actual customer broker engaged by In-Time Shipping Corp. and Hadj with respect to this shipment, and possibly other shipments as well.

29.     As identified on the Dec. 5 Shipment Bill of Lading, the intended storage facility for the grey market goods in the Dec. 5 Shipment is Unit 1612 of American Self Storage located at 586 River Avenue, Bronx NY10468.

30.     On December 11, 2015, Plaintiffs put In-Time Shipping Corp. and American Self Storage on notice of its claims relating to the Dec. 5 Shipment and the FAIR & WHITE Brand goods.

31.     Plaintiff further intends to put In-Time Shipping Corp. and American Self Storage on notice of this lawsuit as each is a current and/or potential custodian of the grey market goods and/or a party potentially able to control of the infringing goods.

32.     As a direct and proximate result of the foregoing, Plaintiffs have suffered and, unless this Court enjoins Hadj and these Defendants, including his associated entities, from further distribution of the gray market goods, will continue to suffer, actual economic damages in the form of lost sales, revenues, and profits, as well as immediate and irreparable reputational harm for which it has no adequate remedy at law; furthermore, unless the distribution of the infringing product is enjoined by this Court, the public and consumers will be harmed through deception and possible injury. Accordingly, Hadj and any entity which he owns or controls must

be enjoined from any further infringement of Plaintiffs' marks including from any further importation and distribution of gray market FAIR & WHITE Brand products.

33. Plaintiffs, desirous of protecting the valuable goodwill associated with their respective marks, allege the following:

## COUNT I:
## FEDERAL TRADEMARK INFRINGEMENT THROUGH SALE OF MATERIALLY DIFFERENT GOODS

34. Plaintiffs restate and reallege each and every allegation contained in paragraphs 1-33, inclusive of this complaint and the acts of Defendants asserted therein, as if fully recited in this paragraph.

35. Gapardis is the owner of the entire right, title, and interest in the valid and subsisting Federal trademark registrations for FAIR & WHITE (Reg. No. 2,839,374), F & W (Reg. No. 3,289,890) and PARIS FAIR & WHITE (Reg. No. 2,497,918. See ¶ 21. The PARIS FAIR & WHITE registration is incontestable, pursuant to 15 U.S.C. § 1065.

36. Ownership of a Federal trademark registration is *prima facie* evidence of the Registrant's exclusive right to use the registered trademark in commerce in connection with the goods or services specified in the certificate.  15 U.S.C. § 1057(b).

37. Upon information and belief, the Dec. 5 Shipment, purportedly from Continental Labortoires, to Hadj recently arrived in the Port of New York on December 5, 2015.

38. Upon information and belief, Continental Labortoires did not authorize the Dec. 5 Shipment, did not authorize the use of its name as "Shipper" of these goods, did not orchestrate, organize or otherwise participate in the shipment of these goods.

39. Hadj is not an authorized importer, distributor, retailer or wholesaler of FAIR & WHITE Brand products and thus, upon information and belief, the goods contained in the Dec. 5

Shipment are gray market goods and materially different from the genuine product sold by Plaintiffs under the FAIR & WHITE Marks in the U.S.

40. Upon information and belief, compared to the Plaintiffs' products authorized for sale in the United States, the gray market FAIR & WHITE Brand products imported and distributed by Hadj and his related entities are materially different as described in paragraph 21, above.

41. Hadj's importation, distribution and sale of the materially different, gray market FAIR & WHITE Brand products infringe Plaintiffs' exclusive trademark rights.

42. On information and belief, Hadj and his related and associated entities have no present intention of terminating its sales of materially different goods under the FAIR & WHITE Marks.

43. The Plaintiffs lack an adequate remedy at law.

44. The harm of enjoining Hadj's infringement is minimal relative to the harm that would be caused to Plaintiffs if the infringement were allowed to continue.

## COUNT II:

## FEDERAL UNFAIR COMPETITION LAW AGAINST DEFENDANTS

45. Plaintiffs restate and reallege each and every allegation contained in paragraphs 1-97, inclusive of this complaint and the acts of Defendants asserted therein, as if fully recited in this paragraph.

46. The acts of Defendants complained of herein constitute unfair competition under federal law 15 U.S.C. § 1125.

## COUNT III:
## UNFAIR COMPETITION UNDER THE COMMON LAW OF NEW YORK

47. Plaintiffs restate and reaver each and every allegation contained in paragraphs 1-

54, inclusive of this complaint and the acts of Defendants asserted therein, as if fully recited in this paragraph.

48.     The acts of Defendants complained of herein constitute unfair competition in violation of the common law of the state of New York

## COUNT IV:
## TRADEMARK INFRINGEMENT UNDER THE COMMON LAW OF NEW YORK

49.     Plaintiffs restate and reaver each and every allegation contained in paragraphs 1-56, inclusive of this complaint and the acts of Defendants asserted therein, as if fully recited in this paragraph.

50.     The acts of Defendants complained of herein constitute trademark infringement in violation of the common law of the state of New York.

51.     Plaintiffs restate and reaver each and every allegation contained in paragraphs 1-56, inclusive of this complaint and the acts of Defendants asserted therein, as if fully recited in this paragraph.

## COUNT V:
## DECEPTIVE ACTS AND PRACTICES UNDER SECTION 349 OF NEW YORK GENERAL BUSINESS LAW

52.     Through their importation, distribution, offer to sell and sale of grey market products bearing the FAIR & WHITE Marks, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

53.     Defendants' deceptive acts or practices, as described in the paragraph above, are materially misleading. Upon information and belief, these acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Defendants have directed

their marketing activities, and Plaintiffs have been injured thereby.

54. By the acts described above, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 of the New York General Business Law.

55. Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law and are thus damaged in an amount not yet determined.

## DEMAND FOR JURY TRIAL

56. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by Jury on all issues triable of right by a Jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court order the following relief:

1. For judgment that Defendants have violated Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a);

2. For judgment that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

3. For judgment that Defendants have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

4. For judgment that Defendants have engaged in deceptive acts and practices under Section 349 of the New York General Business Law;

5. For judgment that Defendants have engaged in trademark and service mark infringement under the common law of New York;

6. For judgment that Defendants have engaged in unfair competition in violation of the common law of the State of New York.

7. That pursuant to 15 U.S.C. §§ 1116 and 1125, and the equity jurisdiction of this court, a preliminary and permanent injunction be issued enjoining and restraining Defendants and their officers, agents, employees, representatives, and all persons in privity therewith from:

   a. Using any reproduction, counterfeit, copy or colorable imitation of the FAIR & WHITE Marks to identify any goods or their packaging not authorized by Plaintiffs;

   b. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of the FAIR & WHITE Marks;

   c. Using a false description or representation including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or their packaging as being those of Plaintiffs or sponsored by or associated with Plaintiffs and from offering such goods into commerce;

   d. Further infringing the FAIR & WHITE Marks by importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products or their packaging not authorized by FAIR & WHITE Marks bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the FAIR & WHITE Marks;

   e. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the FAIR & WHITE Marks in connection with the promotion, advertisement,

display, importation, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products or their packaging in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, imported, distributed, manufactured, sponsored or approved by, or connected with Plaintiffs;

f.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

g.  Constituting an infringement of any of the FAIR & WHITE Marks or of Plaintiffs.' rights in, or to use or to exploit, said trademarks, or constituting any dilution of the FAIR & WHITE Marks;

h.  Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe or dilute the FAIR & WHITE Marks; and

i.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (h).

8. Directing that Defendants deliver up for destruction to Plaintiffs all unauthorized products, advertisements and packaging in their possession or under their control bearing any of the FAIR & WHITE Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

9. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or associated packaging manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products.

10. That pursuant to 15 U.S.C. § 1117, Defendants be directed to pay over to Plaintiffs, any and all damages which they have sustained by consequence of Defendants' Federal Trademark Infringement.

11. That pursuant to 15 U.S.C. § 1117, the Court order Defendants to pay Plaintiffs statutory damages for their infringing activities.

12. That due to the willful nature of the Defendants' actions the amounts of actual damages be trebled as provided for in 15 U.S.C. §1117.

13. That pursuant to 15 U.S.C. § 1117, Defendants be required to pay to Plaintiffs the costs of this action, including its attorneys' fees and disbursements incurred.

14. That Defendants be required to file with this Court and serve on Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the terms of the injunction.

15. That Plaintiffs be granted such other and further relief as this court deems just and equitable.

By: *[signature]*
Matthew C. Wagner (mw9432)
mwagner@dmoc.com
Jane C. Christie (jc4344)
DISERIO MARTIN O'CONNOR &
CASTIGLIONI, LLP
One Atlantic Street
Stamford, CT 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321
*Attorneys for Plaintiff*

Dated: December 14, 2015
Encl.: Exhibits A-B